IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Kalvin Rhone, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)**<br><br>*Plaintiffs,*<br><br>v.<br><br>**ZM Investments, LLC d/b/a Mercury Chophouse and Abdelhamid Moutaouakil**<br><br>*Defendants.* | No. 4:20-cv-228<br><br><br>COLLECTIVE ACTION COMPLAINT |

Kalvin Rhone, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b), files this complaint against ZM Investments d/b/a Mercury Chophouse and Abdelhamid Moutaouakil (collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA").

### I.     NATURE OF SUIT

1. This is a collective action brought by Plaintiff on behalf of himself and all others similarly situated under 29 U.S.C. § 216(b) who worked as servers at Defendants' restaurant and were paid a direct cash wage of less than minimum wage.

2. In 1938, Congress passed the FLSA in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a minimum standard of living.[1] The purpose of the FLSA is to provide "specific minimum protections to individual

---

[1] *See Martinez v. Behring's Bearings Service, Inc.*, 501 F.2d 104, 107 (5th Cir. 1974) ("[t]here can be no doubt that the purpose of the FLSA was and is to protect interstate employees by denying their employers the tool of toying with workers' wages when battling in the competitive market.")

workers and to ensure that each employee covered by the Act ... receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as well as "underpay."' *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981).

3.  Section 206 of the FLSA requires employers to compensate employees at a rate of not less than the minimum wage, which is currently $7.25 per hour. *See* 29 U.S.C. § 206(a). However, for tipped employees, employers may take a "tip credit" against payment of the full minimum wage in an amount up to $5.12 per hour, using a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee. *See* 29 U.S.C. § 203(m). The use of the tip credit results in a huge savings to employers who, by utilizing the tip credit, are relieved of their obligation to pay the full minimum wage and can pay employees as little as $2.13 per hour plus tips.

4.  Though, in utilizing the tip credit defense, the FLSA specifically sets forth two conditions that an employer[2] must satisfy: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all the tips they receive, except those tips included in a lawfully administered tip pool. *Id*. "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . you may obtain a . . . credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground

---

[2] *See Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010) (quoting *Bernal*, 579 F.Supp.2d at 808) ("[d]efendants, as the employers, bear the burden of proving that they are entitled to taking tip credits."); *Whitehead v. Hidden Tavern Inc.*, 765 F. Supp. 2d 878, 881-82 (W.D. Tex. 2011) (The burden of proof is not upon plaintiffs under the circumstances of establishing a tip credit.)

2

allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

5. Here, Defendants have a policy and practice of paying all their employee servers, including Plaintiff and Class Members, subminimum hourly wages under the tip credit provisions of the FLSA. However, Defendants failed to follow federal law and violated Section 203(m) – an affirmative defense – in that Defendants unlawfully (1) failed to inform Plaintiff and Class Members of the tip credit pursuant to 29 U.S.C. § 203(m); (2) did not allow Plaintiff and Class Members to retain all of their tips; and (3) requiring Plaintiff and Class Members to contribute a portion of their tips to an illegal tip pool.[3]

6. Defendants' illegal practices in violation of the FLSA have resulted in a forfeiture of the "tip credit." Consequently, Defendants are liable to Plaintiff and Class Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

7. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of himself and all others similarly situated.

## II.   PARTIES

8. Plaintiff, Kalvin Rhone, is an individual and resident of Texas. Plaintiff was employed by Defendants as a server within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff was an "employee" of Defendants as defined by the FLSA. Plaintiff has consented to be a party-plaintiff to this action as indicated by the notice of

---

[3] Whenever the term "tip" is used in this Complaint, it shall carry the definition assigned to it under 29 C.F.R. § 531.52.

consent that will be filed with the Court.

9.   The Putative Class Members are all individuals who worked for Defendants as servers within Texas during the three (3) year period preceding the filing of this lawsuit through the final disposition of this matter and were paid a direct cash wage of less than minimum wage. ("Class Members"). Class Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).[4]

10.   At all times hereinafter mentioned, Plaintiff and Class Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

11.   Defendant ZM Investments is a limited liability company formed under the laws of Texas and doing business as Mercury Chophouse. Defendant operates a restaurant commonly known as Mercury Chophouse located in Fort Worth, Texas. ZM Investments is the name of the entity from which Plaintiff's and Class Members' paychecks are drawn. Defendant can be served with process by serving its registered agent, Jim Ross & Associates, P.C. at 420 E. LAMAR BLVD., SUITE 110, ARLINGTON, TEXAS 76011.

12.   Defendant Abdelhamid Moutaouakil, an individual, is individually liable as an "employer" as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Upon information and belief, Abdelhamid Moutaouakil is the sole member-manager of ZM Investments. Abdelhamid Moutaouakil acts directly or indirectly in the interest of Mercury Chophouse in relation to its employees (including Plaintiff) by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to

---

[4] "Class Members" includes Klarissa Farrand and Hiro Ford who have already consented to become party-plaintiffs to this FLSA lawsuit as evidenced by their signed consents, which will be filed immediately after the filing of this Complaint.

work at Mercury Chophouse. Abdelhamid Moutaouakil can be served at his residence located at 616 WATERCHASE DRIVE, FORT WORTH, TEXAS 76120, or wherever he may be found.

### III.  JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this matter, which arises primarily under federal law. Specifically, this Complaint asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

14.     This Court has personal jurisdiction over Defendants because Defendants are each doing business in Texas. Moreover, Defendants are each employing Texas residents, including Plaintiff and Class Members, to work at Defendants' restaurant located in Texas.

15.     Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district. Defendants operate the restaurant known as Mercury Chophouse, located at 525 Taylor Street, Fort Worth, Texas 76102, which is within the Northern District of Texas, Fort Worth Division.

### IV.  COVERAGE UNDER THE FLSA

16.     At all relevant times, Defendants have each, individually and jointly, been an "employer" of Plaintiff and Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17.     At all relevant times, Defendants have each, individually and jointly, acted, directly or indirectly, in the interest of an employer with respect to Plaintiff and Class Members.

18.     Specifically, Defendant Abdelhamid Moutaouakil through his ownership interests in Mercury Chophouse, control the day-to-day decisions of the restaurant by making strategic,

operational and policy decisions, and exerting operational control over its employees. Moreover, Abdelhamid Moutaouakil has the power to hire and fire employees, discipline employees, create and enforce employee policies, and set employee compensation. Therefore, Abdelhamid Moutaouakil is individually liable as an employer as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all relevant times, Defendants have been an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose – namely, operating a restaurant called Mercury Chophouse – where Plaintiff and Class Members were employed to work.

20. At all relevant times, ZM Investments has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

21. At all relevant times, Plaintiff and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants who were all engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 326 - 329 (5th Cir. 1993). Specifically, as part of their employment, Plaintiff and Class Members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. In addition,

Plaintiff and Class Members regularly served customers dining at Defendants' restaurant who were traveling from out-of-state or across interstate lines. Finally, Plaintiff and Class Members regularly and frequently processed multiple interstate credit card transactions during every shift they worked.

## V.    FACTS

22. Defendants own and operate a restaurant commonly known as Mercury Chophouse located at 525 Taylor Street, Fort Worth, Texas 76102.

23. During their employment with Defendants, Plaintiff and Class Members handled and sold food and beverages that had been moved in interstate commerce as defined by 29 U.S.C. § 203(b). Plaintiff and Class Members also regularly and frequently handled credit card transactions involving institutions located across interstate lines.

24. At all times relevant, Plaintiff and Class Members were Defendants' "employees" as that term is defined by the FLSA and relevant case law. *See e.g.*, *Reich*, 998 F.2d at 327.

25. As part of the payment scheme that Defendants used to compensate Plaintiff and Class Members, Defendants paid Plaintiff and Class Members a subminimum hourly wage and purported to utilize the tip credit against the payment of the full minimum wage. The use of the tip credit results in huge savings to Defendants because Defendants compensate Plaintiff and Class Members at the significantly reduced hourly wage of $2.13 – with the balance of their wages come directly from customers in the form of tips.

26. For instance, during the three-year period preceding the filing of this lawsuit, Defendants employed Plaintiff as a server and paid him $2.13 per hour prior to accounting for the receipt of earned tips. Defendants then purported to rely on the tips Plaintiff earned by applying at least a $5.12 per hour to bring Plaintiff's effective rate of pay, with tips included, up to the required

7

minimum wage of $7.25.

27. In utilizing the tip credit defense, the FLSA specifically sets forth each of the conditions that the employer must satisfy: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all of their tips, except those tips included in a lawfully administered tip pool. *See* 29 U.S.C. § 203(m).

28. Plaintiff and Class Members have been victimized by Defendants' payment scheme that violates the FLSA. Specifically, Defendants violated Section 203(m), an affirmative defense, by 1) failing to notify Plaintiff and Class Members of the tip credit provisions; 2) requiring Plaintiff Class Members to contribute tips to an illegal tip pool; 3) requiring Plaintiff and Class Members to pay for Defendants' business expenses; and 4) failing to allow Plaintiff and Class Members to retain all of their tips. Therefore, based upon any one or more of the foregoing violations, Defendants violated the minimum wage provisions of the FLSA as cited in 29 U.S.C. § 206 and are prevented from utilizing the tip credit as an affirmative defense to the payment of the full minimum wage under Section 206.

29. Defendants did not inform Plaintiff and Class Members of the provisions of the tip credit, violating *condition one* of 29 U.S.C. § 203(m). *See* 29 C.F.R. § 531.59(b). If the employer fails to adhere to the very specific requirements of the FLSA, the employer loses its right to avail itself of the tip credit. *See Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (stating that if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

30. Furthermore, Plaintiff and Class Members were required to contribute five percent (5%) of their sales to the tip pool – one percent (1%) was allocated to the bar and four percent (4%) was set aside for "support staff." Likewise, bartenders were required to contribute four

percent (4%) of their sales to the tip pool for "support staff."

31. However, Defendants do not employ any "support staff" – front-of-the-house employees such as bussers, hosts, food runners, or any other non-serving front-of-the-house employees. With no support staff, Defendants require their servers – such as Plaintiff and Class Members –to perform all the traditional support roles.

32. In the absence of any non-server front-of-the-house positions, Defendants are not legally allocating Plaintiff and Class Members' four percent (4%) allocation from the tip pool.

33. Mr. Moutaouakil has admitted that these tips labeled for "support staff" were being retained by Defendants and used to compensate the general manager and other non-tipped employees.

34. Defendants' pattern and practice of retaining tips from the tip pool for nonexistent employees and distributing these tips to non-tipped employees results in Defendants' forfeiture of the tip credit. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'"); *See also* 29 U.S.C. § 203(m)(2)(B) ("[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.")

35. Because Defendants required Plaintiff and Class Members' to share tips with other employees who do not customarily receive tips, Defendants failed to adhere to *condition two* of 29 U.S.C. § 203(m) and have thus violated the minimum wage as cited in 29 U.S.C. § 206. Therefore, Defendants are disavowed from using the tip-credit as a defense to the payment of the full

minimum wage.

36. In addition, while utilizing the tip credit, Defendants required Plaintiff and Class Members to pay for various expenses including aprons, wine keys, ink pens, and cash shortages.

37. Defendants' pattern and practice of requiring Plaintiff and Class Members to incur these business expenses violates federal law as such is a retention of tips and further violates *condition two* of 29 U.S.C. § 203(m). *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554-55 (6th Cir. 1999); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

38. In addition to the minimum wage violations, Plaintiff and Class Members have been victimized by Defendants' payment scheme that violates the FLSA's overtime requirement under Section 207.

39. Plaintiff and Class Members are paid inconsistently or incorrectly for hours they worked over forty (40) in a single workweek. At times, Defendants have paid Plaintiff and Class Members at the correct overtime rate of $5.755 for hours worked over forty (40) hours in a single workweek.

40. However, at other times, Plaintiff and Class Members have been paid incorrectly and at inconsistent rates for overtime hours. For instance, in some instances, Defendants only paid

Plaintiff and Class Members at their straight-time regular rate of $2.13 per hour for hours worked over forty (40) in a single workweek.

41. In other instances, Defendants paid Plaintiff and Class Members varying overtime rates for hours worked over forty (40) in a single workweek. In these instances, Defendants paid Plaintiff and Class Members incorrect overtime rates that were less than the correct overtime rate of $5.755 per hour.

42. Defendants' policy of paying Plaintiff and Class Members at their straight-time regular rate for overtime hours and, in other instances, Defendant paid overtime rates that were less than one-and-one half the regular rate, is a violation of 29 U.S.C. § 207. Such a practice resulted in Defendants imposing a tip credit upon Plaintiff and Class Members that exceeded the permissible $5.12 tip credit allowed under the FLSA.

43. Defendants' method of paying Plaintiff and Class Members in violation of the FLSA was not based on good-faith and a reasonable belief that its conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

44. Defendants' method of paying Plaintiff and Class Members in violation of the FLSA was willful and was not based on good-faith or reasonable belief that its conduct complied with the FLSA. Therefore, a three-year statute of limitations applies due to the willful nature of the violations. 29 U.S.C. § 255(a).

45. During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated

damages, attorneys' fees, and costs on behalf of himself and all others similarly situated

## VI.     COLLECTIVE ACTION ALLEGATIONS

46.     The foregoing paragraphs are fully incorporated herein.

47.     Plaintiff brings this FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "Collective Action"). In addition to the claims of the individually named Plaintiff, Plaintiff brings this action as a representative of all similarly situated former and current employees of Defendants. The proposed collective of similarly situated employees ("Class Members") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> **All individuals who worked as servers for Defendants in Texas during the three (3) year period preceding the filing of this lawsuit through the final disposition of this matter and were paid a direct cash wage of less than minimum wage.**

48.     FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

49.     Other employees have been victimized by Defendants' common pattern, practice, and scheme of paying employees in violation of the FLSA. Plaintiff is aware of other employees at who were paid in the same unlawful manner as Plaintiff. Plaintiff is aware that the illegal practices or policies of Defendants have been uniformly imposed on other servers who worked for Defendants. Specifically, Plaintiff is aware of other servers who contributed tips to the same tip pool in which Defendants illegal retained a portion of the tips.

50.     Plaintiff and Class Members have the same pay structure, have the same job duties, and were required to participate in the tip pool from which a portion of the tips were distributed to ineligible participants. Plaintiff and Class Members are all victims of Defendants' unlawful compensation scheme.

51.     Plaintiff and the Class Members are all non-exempt for purposes of minimum wage

payments and overtime payments under the FLSA.

52. Defendants' failure to pay minimum wage pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members. Plaintiff's experience regarding pay is typical of the experiences of the Class Members.

53. Although the exact amount of damages may vary among Class Members, the damages for the Class Members can be easily calculated by a simple formula. The Class Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of illegal conduct in violation of the FLSA's minimum wage requirements caused harm to Plaintiff and Class Members.

## VII. CAUSE OF ACTION NO. 1: MINIMUM WAGE VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT

54. The foregoing paragraphs are fully incorporated herein.

55. Defendants' failure to pay Plaintiff and Class Members at the full minimum wage rate is a violation of the FLSA's minimum wage requirement. *See* 26 U.S.C. § 206.

56. During the relevant period, Defendants have violated and are violating the provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by employing Plaintiff and Class Members in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay such employees at the minimum wage rate.

57. Defendants failed to pay Plaintiff and Class Members the full minimum wage according to the provisions of the FLSA for each hour and workweek that Plaintiff and Class Members worked for Defendants during the statutory time period in violation of 29 U.S.C. § 206(a).

58. In addition, to the extent Defendants intend to rely on the "tip credit" as an affirmative defense to the payment of minimum wage, Defendants have violated the tip credit because Defendants: 1) failed to inform Plaintiff and Class Members of the tip credit provisions; 2) required Plaintiff Class Members to contribute tips to an illegal tip pool; 3) required Plaintiff and Class Members to incur business expenses; and 4) failed to allow Plaintiff and Class Members to retain all of their tips.

59. Moreover, when Plaintiff and Class Members worked overtime, Defendant violated the tip credit provision by taking a tip credit that exceeded $5.12. Such a practice resulted in Defendants imposing a tip credit upon Plaintiff and Class Members that exceeded the maximum permissible tip credit of $5.12. Therefore, Defendants are further disavowed from asserting the tip credit because Defendants relied on a tip credit that exceeded the maximum permissible tip credit of $5.12.

60. Defendants' illegal practices in violation of the FLSA have resulted in Defendants' forfeiture of the tip credit, and therefore, Defendants' are precluded from relying on tips to supplement Plaintiff and Class Members subminimum hourly rate. Consequently, Defendants are liable to Plaintiff and the Class Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

61. At all times relevant, Defendants compensated Plaintiff and Class Members less than the federally mandated minimum wage of $7.25 per hour. None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants, Plaintiff, or Class Members.

62. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this lawsuit

as a collective action under § 216(b) of the FLSA to recover unpaid wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of himself and Class Members.

### VIII.   CAUSE OF ACTION NO 2: OVERTIME VIOLATION UNDER THE FAIR LABOR STANDARDS ACT

63.   The foregoing paragraphs are fully incorporated herein.

64.   Plaintiff and Class Members were non-exempt employees entitled to the statutorily mandated overtime wages for *all* hours worked.

65.   Defendants failed to pay Plaintiff and the Class Members one-and-one-half times their applicable regular rate of pay for all hours worked in excess of 40 hours per week. Instead, as described above, in violation of Section 207 of the FLSA, Defendants paid Plaintiff and Class Members at their straight-time regular rate for overtime hours and, in other instances, paid overtime at rates that were less than one-and-one half the "regular rate." *See* 29 C.F.R. § 778.109; 29 U.S.C. § 207(e) (employers must pay overtime at one-and-one-half the employee's "regular rate," which shall include all remuneration paid to the employee).

66.   As a result, Defendants violated Section 207 of the FLSA by paying Plaintiff and the Class Members less than one-and-one-half their regular rate for hours all worked over forty (40) in a workweek. *See* 29 U.S.C. § 207.

### IX.   DAMAGES SOUGHT

67.   The foregoing paragraphs are fully incorporated herein.

68.   Plaintiff and Class Members are entitled to recover compensation for every hour worked at the federally mandated minimum wage rate of $7.25 per hour plus an equal amount as liquidated damages.

69.   Plaintiff and Class Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

70. Plaintiff and Class Members are entitled to all their misappropriated funds, including repayment of all expenses Defendants required Plaintiff and Class Members' to incur plus an equal amount as liquidated damages.

71. Plaintiff and Class Members are entitled to payment of overtime wages at one-and-one-half times their regular rate for all hours worked over forty (40) in each workweek plus an equal amount as liquidated damages.

72. Plaintiff and Class Members are also entitled to an amount equal to all unpaid wages found due (including all of their misappropriated tips and unlawful expenses incurred) as liquidated damages because Defendants' actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

73. Plaintiff and Class Members are entitled to recover damages for the past three (3) years since Defendants' violations were willful.

74. Plaintiff and Class Members are entitled to recover their attorneys' fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

## X.    PRAYER

75. Plaintiff and Class Members pray for judgment against Defendants, jointly and severally, as follows:

    a. For an order pursuant to Section 216 of the FLSA finding Defendants liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiff (and those who may join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips and paid business expenses) and overtime wages due to Plaintiff (and those who may join in the suit);

    b. For an order awarding Plaintiff (and those who may join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

    c.  For an order awarding Plaintiff (and those who may join in the suit) all attorneys' fees incurred;

    d.  For an order awarding Plaintiff (and those who may join in the suit) all costs and expenses incurred in pursuing this action; and

    e.  For an order granting any such other and further relief as this Court deems just and appropriate.

Respectfully submitted,


By: */s/ Drew N. Herrmann*
    Drew N. Herrmann
    Texas Bar No. 24086523
    *drew@herrmannlaw.com*
    Pamela G. Herrmann
    Texas Bar No. 24104030
    *pamela@herrmannlaw.com*

    **HERRMANN LAW, PLLC**
    801 Cherry St., Suite 2365
    Fort Worth, TX 76102
    Phone: 817-479-9229
    Fax: 817-887-1878
    ATTORNEYS FOR PLAINTIFF
    AND CLASS MEMBERS